United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAMONE HAYNES,
Petitioner,
v.
SIRCOYA M. WILLIAMS,
Respondent.

Case No. 25-cv-03670-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Damone Haynes seeks federal habeas relief under 28 U.S.C. § 2254 from his California state convictions for murder and carjacking. Neither of his habeas claims has merit. His claim that there was insufficient evidence to support his carjacking conviction fails because it was permissible for the jury to infer that Haynes killed the victim to obtain his property and his claim of ineffective assistance lacks any factual allegations in support of such a claim.

The petition for habeas relief is DENIED.

## BACKGROUND

In 2021 Haynes was convicted by an Alameda County Superior Court jury of murder, carjacking, and possession of a firearm by a felon. *People v. Haynes*, No. A163965, 2023 WL 7968414, at *1 (Cal. Ct. App. Nov. 17, 2023). The jury also found true sentencing enhancements for personally and intentionally discharging a firearm causing death, personally using a firearm, and personally inflicting great bodily injury. *Id.* A sentence of 50 years to life was imposed. (Am. Pet., Dkt. No. 10 at 1.) His attempts at overturning his convictions in state court were unsuccessful. This federal habeas petition

United States District Court
Northern District of California

followed. Respondent filed an answer; Hayes did not file a traverse nor any other response to the answer.

The state appellate court summarized the facts as follows:

> **I. Shooting and Initial Investigation**
>
> [Haynes] and his codefendant Anthony Rhodes (Rhodes) were tried together for the murder and carjacking of Charles Billings. Terrell Martinez (Martinez) was also charged with carjacking and being an accessory to the murder. Martinez's case was severed for trial.
>
> At 3:00 a.m. on July 26, 2019, Oakland police were dispatched to Bancroft Avenue in Oakland after 911 calls reported a man lying in the roadway. The police found Charles Billings lying face down in the bike lane with multiple gunshot wounds. He had been shot in his temple, chest, hand, hip, and thigh. He had $500 in his pocket and a black mark on his shirt suggesting he was shot at close range. Billings was pronounced dead at the scene.
>
> A witness at the scene provided police with the license plate number of Billings's van. The van was not present at the scene when police arrived. The police also obtained surveillance video from several homes in the area.[1] The video shows a black sedan pull behind Billings's van at approximately 2:48 a.m. The passenger in the front seat exits the sedan and approaches the van. About 45 seconds later, a second man exits the rear of the sedan and walks to the van. Two or three flashes illuminate the inside of the van, and Billings falls out of the van onto the road. The driver of the sedan exits the vehicle. The gunman walks around to the back of the van and fires another round in Billings's direction. The gunman walks toward Billings and fires three more rounds at him. As the gunman then walks toward the back of the van, the van drives away. The gunman then walks up to Billings and fires another round at very close range. At 2:51 a.m., the sedan pulls forward, the gunman enters the sedan, and the sedan follows the van.
>
> Surveillance footage from a gas station showed the sedan traveling on 98th Avenue with Billings's van close behind, at 2:54 a.m. Surveillance footage from cameras in San Leandro show a black Impala sedan and Billings's van traveling close together shortly after 6:00 a.m.
>
> On July 31, 2019, the police located Billings's van in San Leandro. Two shell casings were recovered on the front passenger seat. There were two

[1] The surveillance video of the incident was described by the prosecutor as "very grainy and very far away," such that the specific individuals could not be identified.

strike marks on the driver's side armrest and bullet holes in the interior of the driver's door. The police also recovered suspected heroin and cocaine.

On August 4, 2019, the police located and towed the Impala sedan seen in the surveillance video. Terrell Martinez's DNA was found on the steering wheel.

## II. Martinez's Testimony

Martinez testified that he met [Haynes] when the two were in prison in 1999. In 2019, Martinez met Rhodes through [Haynes]. On the night of July 25, 2019, Martinez was at home, where he lived with his girlfriend, Ericka J., when [Haynes] called him, looking for heroin. At 2:00 a.m. on July 26, [Haynes] and Rhodes went to Martinez's home, asking for heroin. Martinez said he did not have any, and Rhodes and [Haynes] said they knew someone who had some. Rhodes called Devon B., but Devon B. said he was out of town. Then Rhodes suggested they go meet Billings, and he asked Martinez for a ride. They agreed that [Haynes] and Rhodes would buy heroin from Billings and give some to Martinez in exchange for giving them a ride. Martinez drove Ericka's black Passat.[2] Rhodes was in the front passenger seat, and [Haynes] was in the back seat behind Rhodes. [Haynes] directed Martinez to Billings's location, and he parked behind the van.

Rhodes got out of the car and walked up to the van's passenger side. Rhodes opened the rear passenger side door and leaned into the van. About a minute later, Rhodes waived [Haynes] over. [Haynes] walked up to the van and opened the front passenger door. Martinez heard two pops and looked up. He saw Billings get out of the van on the driver's side, screaming, and walk toward the back of the van. Billings fell onto the street near the back bumper of the van. Martinez froze in disbelief. Martinez jumped out of the car and asked [Haynes] what he was doing. [Haynes] walked to the back of the van and shot Billings a couple of times while Billings was on the ground. Rhodes drove away in the van. [Haynes] told Martinez to get back in the car, and he complied. [Haynes] got in the front passenger seat of the car, held the gun in his lap, and told Martinez to follow the van.

Martinez pulled alongside the van at a stoplight, and [Haynes] told Rhodes to follow them. [Haynes] directed Martinez to drive to San Leandro, and Rhodes followed in the van. [Haynes] made a phone call during the drive. Martinez drove, at [Haynes]'s direction, to a parking lot behind Marcello M.'s apartment complex. At the time, Martinez did not know Marcello M. The gate to the parking lot was open when he arrived. Rhodes parked the

[2] Martinez had access to Ericka J.'s black Volkswagen Passat and a black Chevrolet Impala owned by Ericka J.'s mother, Verva J.

United States District Court
Northern District of California

van on the street outside the complex. [Haynes] and Rhodes searched the van for about 10 to 15 minutes while it was parked on the street. Then they told Martinez to search the van, and he did so for about 5 to 10 minutes, but he did not find anything. [Haynes] and Rhodes gave Martinez some 'IDs and paperwork' and told him to throw it away. When Martinez went to throw away the papers, it looked as though [Haynes] and Rhodes were showing each other something, but Martinez could not tell what it was.

The three of them got back into the Passat. [Haynes] and Rhodes told Martinez to drive them to 98th Avenue in Oakland. Martinez dropped them off there, and then he went back home.

Rhodes arrived at Martinez's home at 6:30 a.m. and told Martinez that [Haynes] wanted Rhodes and Martinez to move the van. Martinez drove Rhodes back to San Leandro in Verva J.'s Chevrolet Impala. Rhodes moved the van about two blocks away. Martinez then drove to a convenience store and a methadone clinic before dropping Rhodes off at a BART station.

Martinez was interviewed during the police investigation. The police did not show Martinez the surveillance video before they spoke with him. Martinez initially said he knew nothing about the incident. He then told the police that he went to Billings's van to buy heroin but did not know what was going to happen and as soon as the shooting started he drove off alone and went straight home. Eventually, Martinez told the police the more detailed version of what happened. Martinez testified at trial without any agreements from the district attorney's office.

### III. Telephone Records

The police reviewed Billings's cell phone records and found that three hours before the shooting, Billings received a call from a number ending in 6544. The 6544 number was registered to Gloria P. Thirteen minutes before the shooting, the 6544 number received a call from a number ending in 6322. Martinez testified that in July 2019, Rhodes loaned him a phone with the 6322 number and he used it for about a month and a half. However, Martinez said that on the night of the incident, Rhodes used the phone with the 6322 number to contact Devon B. Based on cell tower records, both phones were in East Oakland 13 minutes before the shooting. An inspector from the Office of the Alameda County District Attorney was qualified as an expert in cell phone detail interpretation and cell phone plotting. He reviewed phone records provided to him, including records for the 6544 number and the 6322 number. He testified that between 2:37 a.m. and 3 a.m. on July 26, 2019, there was no contact between these two phones, which suggested to him that the people using the phones were together. Both phones continued to communicate with each other after the murder and appeared to travel to

> San Leandro. Immediately after the shooting, the 6544 number also made repeated attempts to contact Marcello M.'s phone number. Ten minutes after the shooting, the 6322 number used a cell tower less than a mile from where Billings's van was found.
>
> When [Haynes] was arrested at a home in Hayward, the police searched the residence and found four phones, including the 6544 number. A woman named Sandra P. (with the same last name as Gloria P.) was present in the home at the time of [Haynes]'s arrest.

(Ans., State Appellate Opinion, Dkt. No. 17-7 at 3-7).

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly

United States District Court
Northern District of California

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

As grounds for federal habeas relief, Haynes claims that (i) there was insufficient evidence to support his carjacking conviction, which means that neither this nor his felony murder conviction can stand; and (ii) his trial counsel rendered ineffective assistance. (Am. Pet., Dkt. No. 10 at 5; Dkt. No. 10-1 at 3-4.)

**i. Sufficiency of the Evidence**

Haynes was charged with murder under two theories, one based on premeditation and deliberation, and the other on felony murder based on carjacking. (Ans., State Appellate Opinion, Dkt. No. 17-7 at 7.) He was also separately charged with carjacking. (*Id.*) Haynes claims that there was insufficient evidence to support his convictions for carjacking and murder. (Pet., Dkt. No. 10 at 5; Dkt. No. 10-1 at 23.) He contends that there is no evidence that he intended to steal Billings's van (or anything inside the van) and therefore there is no evidence to support a felony murder conviction based on carjacking. (*Id.*, Dkt. No. 10-1 at 23-25.)

The state appellate court rejected this claim because a reasonable jury could infer from the circumstances that Haynes killed Billings for the purpose of taking his property:

> Carjacking 'is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear.' (§ 215, subd. (a).) 'The requisite intent—to deprive the possessor of possession—must exist before or during the use of force.' (*People v. Gomez* (2011) 192 Cal.App.4th 609, 618, disapproved on other grounds in *People v. Elizalde* (2015) 61 Cal.4th 523; § 20.)
>
> . . . .
>
> [Haynes] arrived at the scene with his coperpetrator and then shot Billings,

> who fell out of his van. As soon as Billings was out of the van, [Haynes's] coperpetrator immediately drove the van away. [Haynes] followed close behind the van and then directed Martinez to move in front of the van as they traveled to San Leandro. Once they arrived at the San Leandro location, [Haynes] and his coperpetrator searched the van and then directed Martinez to throw away paperwork. It also appeared to Martinez that after [Haynes] and Rhodes searched the van, they were looking at something, but Martinez could not see what it was. Based on this evidence, a reasonable jury could find that [Haynes] formed the intent to steal the van before or during his use of force against Billings. As explained in *People v. Johnson* (2015) 60 Cal.4th 966, where the defendant entered the victim's home, killed her, and then took her car from the garage, '[t]he jury could readily conclude defendant intended to steal when he entered the victim's house with a weapon and beat her to death. It did not have to conclude he killed the victim for no apparent reason and only then decided to steal. When one kills and then takes substantial property from the victim, a reasonable jury can ordinarily find the killing was for the purpose of taking the property.' (*Id.* at pp. 971, 988; *see People v. Gomez*, supra, 192 Cal.App.4th at p. 622 [act of taking a car by one who steals the keys can imply that the key thief intended to steal the car when the thief took the keys].)

(Ans., State Appellate Opinion, Dkt. No. 17-7 at 8, 10-11.)

When reviewing a state court's conviction for sufficiency of the evidence, a federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). In addition to this highly deferential standard, a federal court must accord "considerable deference" to a state court's determination that there was sufficient evidence under *Jackson*. *Id.*

A federal habeas court reviews a sufficiency of evidence claim "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. As noted above, carjacking "is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence

United States District Court
Northern District of California

. . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." Cal. Penal Code § 215 (a). If there was sufficient evidence to support the carjacking conviction, then there was sufficient evidence to support the felony murder conviction based on carjacking.

Habeas relief is not warranted on this claim because it was permissible for the jury to infer from the evidence that when a person kills another and takes substantial property from him, the killing was done for the purpose of taking the property. Haynes's actions lend themselves to such an inference. He shot Billings and then his coperpetrator Rhodes drove the van, which Haynes directed Martinez to follow. When Haynes's car pulled alongside the van, Haynes told Rhodes to follow them, directed Martinez to drive to San Leandro, and then again at Haynes's direction, to the parking lot where the van was searched. Haynes also directed Martinez to destroy some paperwork. It is reasonable to infer that Haynes's use of accomplices and his orderly directing of where and how the van and its contents should be disposed of indicates that Haynes killed Billings with the intent to permanently deprive him of van.

On this record, the jury's finding does not fall below the threshold of bare rationality. *Coleman*, 566 U.S. at 656. The state court's rejection of the claim that there was insufficient evidence to support the murder and carjacking convictions was reasonable and is entitled to AEDPA deference. This claim is DENIED.

**ii. Ineffective Assistance**

Haynes alleges that trial counsel rendered ineffective assistance. (Am. Pet., Dkt. No. 10 at 5.) His claim is stated only as "Ineffective Assistance." (*Id.*) He provides no facts in support of his claim, but rather cites some state cases and a state penal statute regarding habeas law. (*Id.*) Nor does his attached state petition for review to the state supreme court contain any facts or allegations that would state a claim for relief. This is fatal to this claim.

"Conclusory allegations which are not supported by a statement of specific facts do

not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Habeas Rule 2(c) requires that a petition (1) specify all grounds of relief available to the petitioner; (2) state the facts supporting each ground; and (3) state the relief requested.[3] Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of a constitutional error. *Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("Habeas Corpus Rule 2(c) is more demanding" than the notice pleading standards of Rule 8(a)). Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990).

Haynes's prior claim was similarly conclusory in the Statement of Claims section of the petition form ("Insufficient Evidence"), but his attached state supreme court petition for review contained allegations and facts in support of an insufficient evidence claim. (Pet., Petition for Review, Dkt. No. 10-1 at 23-30.) There is nothing comparable filed in support of his ineffective assistance claim. That same petition for review raised a due process claim that co-defendant's trial counsel "acted as a second prosecutor," thereby depriving him of a fair trial. (*Id.* at 33.) This claim was not found cognizable because Haynes did not raise it in the petition itself. In the Order to Show Cause, I stated that the attached state petition for review "contains two claims not raised in the federal petition itself." (OSC, Dkt. No. 12 at 3.) I told Haynes that if he "means to include these two claims in his federal habeas action, he must file an amended petition within 30 days from the date of this Order indicating this." (*Id.*) No amended petition was filed.

Haynes raised an ineffective assistance claim to the state supreme court by way of a habeas corpus petition, a copy of which respondent included as an exhibit to the answer. (Ans., Habeas Petition, Dkt. No. 18-4 at 4, 15-16.) Haynes did not attach this document to his petition, however, so the arguments it contains could not be considered on federal habeas review.

This claim is DENIED.

---

[3] The rule also requires that the petition be printed, typewritten, or legible handwritten and be signed under penalty of perjury.

**CONCLUSION**

The state court's adjudication of Haynes's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Haynes may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

**Dated:** September 24, 2026

WILLIAM H. ORRICK
United States District Judge